986 F.2d 1414
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Patrick McNULTY; Wanda McNulty, Plaintiffs-Appellants,
v.
PRINCE GEORGES COUNTY, MARYLAND; Michael J. Flaherty;
Frank Cohee, Defendants-Appellees,
and
APEX PLUMBING SUPPLY, INCORPORATED; Harold Falchick;
Alexandra Falchick, Defendants.
 No. 91-1891.
 United States Court of Appeals,
Fourth Circuit.
 Argued: October 26, 1992
Decided: February 18, 1993
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. J. Frederick Motz, District Judge; Joseph H. Young, Senior District Judge. (CA-90-1611-JFM)
 Argued: Matt P. Lavine, College Park, Maryland, for Appellants.
 Sean Daniel Wallace, Associate County Attorney, Upper Marlboro, Maryland, for Appellees.
 On Brief: Michael P. Whalen, County Attorney, Michael O. Connaughton, Deputy County Attorney, Upper Marlboro, Maryland, for Appellees.
 D.Md.
 AFFIRMED.
 Before NIEMEYER and HAMILTON, Circuit Judges, and SPROUSE, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Patrick McNulty, after being acquitted in Maryland state court on charges of stealing from his former employer, brought this action in federal district court, alleging violations of 42 U.S.C. § 1983 and state malicious-prosecution law. McNulty named as defendants his former employer, its two owner-officers, the arresting Prince Georges County police officer, the County police chief, and the County.[1] At the close of McNulty's evidence, the trial court granted the defendants' motion for a directed verdict on the § 1983 action.[2] McNulty appeals the directed verdict in favor of the arresting officer, the police chief, and the County. We affirm.
 
 
 2
 * The district court's directed verdict ruling was based on depositions, affidavits, and testimony from the plaintiff's thirteen trial witnesses. From 1983 to 1988 Patrick McNulty worked as the comptroller for Apex Plumbing Supply, Inc. ("Apex") in Brentwood, Maryland. Apex is owned and operated by Harold and Alexandra Falchick. In May 1987 McNulty informed the Falchicks that he planned to relocate to Florida. At Harold Falchick's request, McNulty agreed to continue working for Apex for some time, spending Monday through Thursday of each week in Maryland and the remaining time in Florida. Apex paid McNulty's travel and living expenses during this period.
 
 
 3
 In February 1988 Harold Falchick terminated McNulty's employment with Apex, accusing him of failing to pay Apex's taxes to the IRS and to the Maryland Comptroller. In April 1988 the Falchicks complained about McNulty to the Prince Georges County police department, which assigned Detective Frank Cohee, a member of the Check and Fraud Unit, to investigate. Cohee met with the Falchicks, who described two types of improprieties that McNulty had allegedly committed. First, they said that he had failed to make timely tax payments to the IRS and the Maryland Comptroller, causing Apex to incur penalties and interest. According to the Falchicks, to conceal these penalties and interest charges from them, McNulty had sent the IRS and state comptroller the incurred amounts in the form of checks on which he had forged Mr. Falchick's signature without the latter's knowledge or permission. The checks were drawn on Apex's operating account, for which McNulty was not an authorized signator. Second, the Falchicks told Cohee that McNulty had issued to himself several checks from Apex's payroll account. Although McNulty was an authorized signator on the payroll account, the checks were for money to which he was not entitled. Detective Cohee testified in his deposition that the Falchicks showed him "a large number of documents," but he took only eight: four operating-account checks on which McNulty had forged Mr. Falchick's signature and four payrollaccount checks that McNulty had signed and made payable to himself. The checks totalled over $15,000.
 
 
 4
 The Falchicks also told Cohee that McNulty was responsible for shortages in an unknown number of bank deposits, but that the new Apex comptroller was having difficulty documenting those losses because McNulty had taken certain Apex records with him to Florida.
 
 
 5
 Cohee completed his investigation on June 9, 1988, by telephoning McNulty in Florida. The detective identified himself, explained the Falchicks' complaint, and informed McNulty that he was being investigated on charges of theft and forgery. McNulty denied any wrongdoing. According to his trial testimony, McNulty admitted to Cohee that he had signed Harold Falchick's name to the operating-account checks, insisted this was a "normal practice," stated that the checks were probably for penalties and interest for late tax payments, and told Cohee that the Falchicks were aware of Apex's tax delinquency. McNulty testified that he told Cohee to call the office of the Maryland Comptroller, which could have verified that the checks were for legitimate interest and penalty payments. He also suggested that Cohee contact Apex's bank, which could have verified that Apex was overdrawn "quite a bit" and had accrued penalties and interest. McNulty testified that he gave Cohee the names of people to contact at the comptroller's office and the bank to confirm this information. McNulty also admitted signing the payroll-account checks, and provided Cohee with the names of Apex's accountant and two bank employees who could tell Cohee "whether [the checks] were good" and could substantiate McNulty's authority to sign them. Cohee never contacted any of the given leads.
 
 
 6
 Cohee obtained an arrest warrant for McNulty on June 9, 1988, the same day he telephoned McNulty for the first time. The warrant application omitted McNulty's denial of wrongdoing and the fact that he had provided Cohee with investigative leads. Cohee forwarded the warrant to the sheriff's department in Prince Georges County to serve on McNulty, and when McNulty called Cohee the next morning, the detective informed him that he "was going to file charges." Three months later police arrested McNulty at his Florida home.
 
 
 7
 The charges against McNulty were at first dismissed, apparently because Mrs. Falchick was displeased with the way the case had been handled and wanted it recharged. A senior prosecuting attorney in the Maryland state district court division reviewed the police report; spoke with the State Attorney, Mrs. Falchick, and McNulty's lawyer; and filed an information in state court recharging McNulty with eight felony counts of theft over $300, in violation of the Maryland Criminal Code. The case proceeded to trial, but after the Falchicks testified, McNulty's motion for acquittal was granted.
 
 
 8
 The state trial court granted the motion for acquittal because it found the Falchicks' testimony insufficient for several reasons. Regarding the operating-account checks, the court found Alexandra Falchick incompetent to testify how Apex's financial records were kept when five of the eight checks were issued, because she conceded she did not become familiar with Apex's record-keeping procedures until late 1986. Harold Falchick's testimony that McNulty was unauthorized to issue these checks was unreliable, because he could not testify as to what McNulty was authorized to do. Regarding the payroll-account checks, which McNulty claimed were for vacation pay legitimately due him, Mr. Falchick admitted he was unfamiliar with the payroll records, and the court found unreliable Mrs. Falchick's assertion that the amount McNulty paid himself exceeded his salary as reported on his W-2 forms, because she testified from memory and the State produced no W-2's.
 
 
 9
 After the state-court acquittal, McNulty filed thiss 1983 action.[3] He claimed that Cohee had violated his Fourth Amendment rights by not including in the warrant application either McNulty's denial of wrongdoing or the fact that McNulty had given Cohee the names of people who could verify his innocence.
 
 
 10
 Among McNulty's thirteen trial witnesses in his federal action were representatives from the Maryland Comptroller, Apex's accounting firm, and Apex's bank. All testified on cross-examination that even if Detective Cohee had contacted them about the allegations against McNulty, they would not have released to Cohee the information McNulty claimed would exculpate him. The representative from the comptroller testified that because the records in her office were confidential, a police officer seeking access would have to go through the comptroller's legal department. A member of Apex's accounting firm testified that he would not have released information to a police officer without the approval of the partner in charge of Apex's account and clearance from the firm's attorneys. A representative from Apex's bank said the bank would have provided Cohee with records only in response to a court-ordered subpoena.
 
 
 11
 One of McNulty's claimed errors in this appeal stems from the district court's refusal to admit into evidence the state trial court's opinion granting McNulty's motion for acquittal. It ruled that the opinion was not relevant to any issue in the § 1983 action. It allowed McNulty to inform the jury only that he had been acquitted of the state charges.
 
 
 12
 In connection with his claim against Prince Georges County, McNulty introduced portions of Cohee's deposition showing that the County police department had no official guidelines for officers to follow when applying for arrest warrants, and that the department told officers merely to specify "location and dates and things like that" when applying for warrants. Cohee also testified by deposition that he did not know how corporations were taxed, and that he had never taken a course or had any other training on corporate liability.
 
 
 13
 McNulty makes two arguments on appeal. First, he argues that the district court erred in directing the verdict. He reasons that his evidence showed Cohee's application for the arrest warrant was objectively unreasonable, and this shortcoming resulted from the County's failure to provide adequate training for its police officers. Second, he contends that the district court erred in refusing to admit into evidence the state court's order granting McNulty's motion for acquittal. We cannot agree with either contention.
 
 II
 
 14
 McNulty premises his § 1983 complaint against Cohee on the grounds that the detective lacked probable cause to arrest him. The district court directed a verdict in Cohee's favor because it found McNulty had produced no evidence from which a reasonable juror could have found a violation of McNulty's Fourth Amendment rights. See Brendle's Stores, Inc. v. OTR, 978 F.2d 150, 157 (4th Cir. 1992). We must reverse the district court if a jury could find from the evidence that
 
 
 15
 a reasonably well-trained officer in [Cohee's] position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant. If such was the case, [Cohee's] application for a warrant was not objectively reasonable, because it created the unnecessary danger of an unlawful arrest.
 
 
 16
 Malley v. Briggs, 475 U.S. 335, 345 (1986); see Brinegar v. United States, 338 U.S. 160, 175-76 (1949); Clipper v. Takoma Park, 876 F.2d 17, 19 (4th Cir. 1989). But if the evidence, viewed in the light most favorable to McNulty, established as a matter of law that Cohee had an objectively reasonable belief that McNulty had committed a crime, then probable cause existed and we must affirm the directed verdict in Cohee's favor. Brendle's Stores, 978 F.2d at 157.
 
 
 17
 Our review of the evidence convinces us that Cohee's investigation and warrant application were objectively reasonable. The facts here are unlike those in Clipper v. Takoma Park, a § 1983 case in which the plaintiff presented sufficient evidence to show that the officer who had arrested him for robbery had lacked probable cause. Clipper, 876 F.2d at 20. In that case the officer ignored positive information relating to Clipper's probable innocence, including bank surveillance film showing Clipper was not one of the robbers and an alibi that the officer easily could have verified. In addition, the officer relied on very weak evidence to connect Clipper with the crime: the fact that one of the robbers was Clipper's son-in-law, who drove Clipper's Mustang as the getaway car. Id. at 18-19.
 
 
 18
 Like the arresting officer in Clipper, Cohee failed to pursue the leads furnished by McNulty. However, we held in Clipper that "[the officer's] failure to investigate the leads that Clipper provided was [not], in itself, sufficient to negate probable cause." Id. at 20. The weakness of McNulty's argument is that the decision not to pursue given investigative leads is but one of the circumstances we will consider in determining the reasonableness of an officer's decision to obtain an arrest warrant. The weight of such circumstances will, of course, vary widely depending on the nature of the leads. Here, in contrast to Clipper, even if Cohee had contacted the given leads, they testified that they would not have provided Cohee with exculpatory information. Other circumstances leading us to conclude that the decision to apply for a warrant here was reasonable are that Cohee acted pursuant to detailed accusations by the Falchicks, whom he had no reason to suspect of lying; Cohee examined the checks used to achieve the alleged theft; and McNulty admitted to Cohee that he had forged Mr. Falchick's signature on the operating-account checks. Although Cohee's investigation was no paradigm, in light of the "reasonably trustworthy information," Brinegar, 338 U.S. at 176, he had received from the Falchicks and the lack of available evidence exculpating McNulty, Cohee's warrant application was, in our view, objectively reasonable.
 
 
 19
 In his claim against the County and the police chief, McNulty argues that Cohee's unreasonable warrant application resulted from inadequate police training by the County. To prevail on this part of his § 1983 action, McNulty must show that: (1) he was deprived of a constitutional right, (2) the County had a policy (3) that amounted to "deliberate indifference" to McNulty's constitutional rights, and (4) the policy caused Cohee's indifference to McNulty's rights. City of Canton v. Harris, 489 U.S. 378, 388-91 (1989); Buffington v. Baltimore County, 913 F.2d 113, 122 (4th Cir. 1990), cert. denied, 111 S. Ct. 1106 (1991). Because we conclude that Cohee's investigation and warrant application were reasonable, McNulty has failed to establish the first prong of the Canton test. For that matter, even if Cohee's actions had been unreasonable, and assuming that the County had a policy of not educating its Check and Fraud Unit detectives on corporations, McNulty's evidence failed to show causation between that policy and his arrest. Even if Cohee had been trained sufficiently on the complexity of corporate records to have known how to verify the Falchicks' allegations, representatives of the bank, the accounting firm, and the comptroller testified that they would not have given Cohee any exculpatory information. Therefore, McNulty's evidence failed to establish a § 1983 violation by the County or the police chief.
 
 
 20
 Finally, we find no error in the district court's refusal to find that the defendants were collaterally estopped from proving Cohee's investigation was reasonable. Contrary to McNulty's argument that the state court opinion granting his motion for acquittal conclusively established that Cohee's investigation was unreasonable, the issues in the state criminal case and the federal § 1983 action were not the same. See O'Reilly v. County Bd. of Appeals, 900 F.2d 789, 791 (4th Cir. 1990). The state criminal court held that the evidence did not establish McNulty's guilt beyond a reasonable doubt; that issue, of course, is quite different from the question whether Cohee lacked probable cause for McNulty's arrest. Nor did the district court err in its alternative ruling excluding the state judgment under Federal Rule of Evidence 403, in light of the obvious confusion the evidence would have caused. See United States v. Abel, 469 U.S. 45, 54-55 (1984).
 
 
 21
 In view of the above, the judgment of the district court is affirmed.
 
 AFFIRMED
 
 
 [1]
 Patrick's wife, Wanda McNulty, is also a plaintiff-appellant. She alleged damage from Patrick's prosecution in the form of emotional distress and interference in her marital and family relations. Because Wanda's claims are derivative of her husband's, we refer to Patrick McNulty only
 
 
 [2]
 The trial court also directed a verdict for the officer, the police chief, and the County on the state malicious-prosecution claim. The state claim against the former employer and its owner-officers went to the jury, which returned a $125,000 verdict in McNulty's favor. Neither the directed verdict nor the jury verdict on the malicious-prosecution claim has been appealed
 
 
 [3]
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress
 42 U.S.C. § 1983.