**WEB COMMUNICATIONS GROUP, INC., Plaintiff,**

v.

**GATEWAY 2000, INC., and Quebecor Printing (USA) Corp., Defendants.**

No. 93 C 6821.

United States District Court, N.D. Illinois, Eastern Division.

Jan. 20, 1995.

Michael R. Levinson, Janice L. Block, and Alan S. Dalinka, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for Gateway 2000.

Monica L. Thompson and Marianne C. Holzhall, Keck, Mahin & Cate, Chicago, IL, for Quebecor.

---

R. Mark Halligan, Howard B. Rockman, and John A. Ambrogi, Welsh & Katz, Ltd., Chicago, IL, for Web.

### MEMORANDUM ORDER

BOBRICK, United States Magistrate Judge.

Before the court is WEB COMMUNICATIONS GROUP, INC.'S MOTION IN LIMINE TO EXCLUDE EVIDENCE RELATING TO BRUCE JENSEN IN PLAINTIFF'S CASE. By way of this motion WEB COMMUNICATIONS GROUP, INC., ("Web") seeks to exclude, in its case, certain designated exhibits relating to payments made by Gary Jacobsen, Web's principal officer, to Bruce Jensen for work contracted by Gateway 2000, Inc. ("Gateway") with Web. Web seeks exclusion of this evidence under Local Rule 5, and Federal Rules of Evidence 104(a), 401, 402, and 608(b).

### I. FACTS

Generally, this matter involves Web's claim that Gateway misappropriated its trade secret information, namely an advertising format used in magazines; referred to as a "stepped insert," wrongfully converting same to its own use. Additionally, Web makes claims under theories of unjust enrichment, breach of contract, tortious interference with prospective economic advantage, unfair methods of competition, and unfair or deceptive acts or practices.

Web complains that Gateway breached an oral contract under which Web was to receive significant continuing fees for rendering creative advertising publishing services to Gateway. Web alleges that it provided Gateway with creative intellectual properties (the stepped insert) which Gateway misappropriated, using it elsewhere, thus breaching the alleged oral agreement as well as other foreseeable continuing contracts. Much of Web's claim, and Gateway's defense, deals with perceived expectations of the parties, as those expectations can be established under suppositions of existing customs and practices within the printing industry. The existence of the alleged oral agreement, as well as any damage claim asserted by Web,

is strongly contested by Gateway, not to mention Gateway's challenge to the legitimacy of any intellectual property rights to which Web might lay claim.

In this case Web's principal, Gary Jacobsen, had an agreement with Bruce Jensen (the person who was instrumental in bringing the parties together) under which Jacobsen was to pay Jensen a "commission," "finder's fee," or "kickback" as defendant would characterize it, equal to ten percent of each and every Gateway order placed with Web. (Jacobsen Dep. 101–120). This arrangement encompassed the alleged oral contract in issue in this case.

Under the Jacobsen–Jensen arrangement, Jacobsen was to send a copy of the signed Web–Gateway purchase order to Jensen, together with a check in the amount of ten percent of the total dollar value of the order. The check and the copy of the invoice were to be sent directly to Jensen's home, rather than to his regular business address at R.R. Donnelly. (Id.) Each Web–Gateway purchase order (on Web's order form) was signed by Jacobsen for Web and by Barbara Gross for Gateway.

As it turned out, Jacobsen would not send a copy of the original signed purchase order to Jensen. Instead, Jacobsen would falsely alter the original purchase order to show a reduced amount of units ordered, with a reduced purchase price shown as paid by Gateway to Web. Jacobsen would tape a replica of Ms. Gross's signature, cut from some other Gateway purchase order, to the altered invoice. Jacobsen would then make a copy of the altered purchase order with the taped Gross signature affixed to it and send this to Jensen along with his check in the reduced amount shown on the falsified invoice. It is these documents, the original invoices of Web and Gateway, the original invoices containing Jacobsen's handwritten notations from which the altered invoices followed, the altered invoices having Gross's signature taped to it, copies of the altered invoices, and an invoice from which Gross's signature had been cut

and removed, that are the subject of Web's motion in limine.[1]

To complete the recitation of fact, it should be noted that the subject purchase orders, besides showing payments between Web and Gateway, also contained confidential information relating to Gateway's customers, the nature of the order, the number of units ordered, and unit prices.

Web maintains that while the "Jensen" documents may be relevant in the setting of Gateway's counterclaim, it is not so in its case. Web argues that the documents are not relevant to the claim or defense under its complaint (Fed.R.Evid. 402–403), and more specifically are barred as extrinsic evidence under Fed.R.Evid. 608(b), since the documents will be used solely for the purpose of attacking Jacobson's credibility and character.

We disagree with Web's characterization of this evidence since we find all the documents substantive in nature, and relevant to issues raised in plaintiff's case. Accordingly, plaintiff's motion will be denied.

## II. RELEVANCE OF DOCUMENTS

■ There is no reason to disagree with Web that the subject falsified purchase orders Jacobsen manufactured and then sent to Jensen will have a decided affect in adversely portraying the character, conduct, and credibility of Jacobsen. This evidence will indeed be used to attack his reputation on a broad spectrum. We hold little agreement, however, with Web's characterization that the falsified purchase orders, with the forged signature of Ms. Gross, are subject to Fed.R.Evid. 608(b) since they are extrinsic in nature. Our review of the documents find them to be relevant and admissible under Fed.R.Evid. 402, and material to core factual issues in this case, which take the documents outside the preclusion provision of Fed.R.Evid. 608(b). *U.S. v. Ferrell*, 625 F.Supp. 41, 44 (E.D.Pa.1985).

We conclude that the documents sought to be excluded, while possibly critical of Jacobsen's conduct and character, are none the less substantive evidence relating to the following disputed factual issues:

(a) *Relationship Between Plaintiff and Defendant:*

Jensen, the individual who directed Gateway to Web, is claimed to be a person of good judgment, coming highly recommended. At the time he referred Gateway to Web, he was an employee of R.R. Donnelly, a company performing significant amounts of print work for Gateway. Web maintains that its own reputation and goodwill was a significant competitive factor in obtaining its Gateway work. We find then, that the communications, correspondence, and arrangements between Jacobsen and Jensen (all unknown to Gateway) bear upon the exact relationship between Web and Gateway and whether, under equitable and legal principles, the necessary ingredients for an oral contract existed. The documents will be relevant to the issue of whether the parties' relationship was one solely based upon arm's length transactions. The documents become especially relevant in that Jensen had a significant economic interest in the transactions between Web and Gateway. Plaintiff's Statement of Contested Facts Not Agreed To at ¶¶ 468, 471, 481, 488, 534, 539, 544, 556, 615, 617, 631–633, 644, 661–662, 664, 666; Agreed Statement of Contested Facts at ¶¶ 6, 8, 11–12, 38, 115, 125–126, 130–131, 143, 144–146, 148–152, and 163.

(b) *Custom and Practice*

Web relies, in no inconsequential manner, upon certain alleged customs and practices within the printing industry to establish the rightfulness of its claim. Web's own compliance with custom and practice, as well as Web's opinion evidence relating to the existence of certain alleged custom and practice, is in issue in this case. To the extent that plaintiff claims its own actions were consistent with these existing customs and practices, accordingly substantiating its claims against Gateway, the communications and documents Jacobsen and

---

**1.** These documents apparently include, among others, those identified by Bates Stamp Numbers W0090, W0089, W00088, G00035, W00070, W00099, W00098, W00097, W00141, G00036, and W00092.

Jensen exchanged become significantly relevant. Among the alleged customs and practices in the printing industry are those dealing with confidentiality and accurate billing. The documents Jacobsen sent to Jensen contained information of a confidential nature to Gateway. In addition, the documents show the existence of a "referral" or "kickback" scheme, an arrangement unknown to Gateway at the time it began negotiating with Web. The factual issue thus exists as to whether a "kickback" scheme is custom and practice in the printing industry. Web's involvement in this arrangement is certainly an issue. Since each party's alleged adherence to customs and practices in the printing industry is a contested material fact in this case, the resolution of that issue will be material to the ultimate issue of whether a contractual relationship existed between the parties. It is in this setting that the fabricated and forged purchase orders become relevant. Agreed Statements of Contested Facts, ¶¶ 38, 44–45; Plaintiff's Statement of Contested Facts and Issues of Law Not Agreed To, ¶¶ 359–60, 86, 89, 557, and 559.

*(c) Damages*

Web seeks damages from Gateway for loss of profits due to the alleged trade secret misappropriation and breach of oral contract. As discussed above, any contracts for services between the parties were subject to the Jacobsen–Jensen ten percent "finders fee," agreement. Accordingly, the Jacobsen–Jensen financial arrangement is an essential element in the computation of plaintiff's alleged lost profits, and as such, the documents establishing the financial arrangement is substantive evidence. Additionally, Web seeks payment from Gateway under a theory of equity and good conscience (Plaintiff's Statement of Contested Facts Not Agreed To, ¶ 611). In this regard, we simply need observe that the propriety of the Jacobsen–Jensen "finder's fee," an arrangement concealed from Gateway, easily finds relevance in issues of equity and good conscience.

■ *(d) Reputation*

Web intends to introduce evidence about its reputation in the industry and the importance of that reputation in the highly competitive printing industry. (Plaintiff's Statement of Contested Fact and Issues of Law Not Agreed To, ¶ 468). Web intends for this evidence to help establish alleged inducements by Gateway, under overtures of mutual respect, confidence and trust, to engage Web in work on behalf of Gateway under the alleged oral contract. (Plaintiff's Agreed Statement of Contested Facts, ¶¶ 8–9, 11–12). Under Fed.R.Evid. 405(b) where reputation is an element in a claim, testimony about a person's character or reputation by means of questions concerning particular instances of conduct is appropriate. 1 *Christopher B. Mueller & Laird C. Kirkpatrick, Federal Rules of Evidence*, §§ 122 at 726–728 (2d Ed.1994). The Jacobsen–Jensen arrangement, and the falsified documents involved in the arrangement, have significance and relevance to this issue.

### III. *EVIDENCE OF CHARACTER AND CONDUCT*

It is more than obvious that Gateway intends to use the Jensen documents as a means of attacking the credibility, character, and conduct of Jacobsen, Web's chief officer. The alterations made to the Web–Gateway original invoices, together with the falsification of the signature of Ms. Gross to the altered invoices, all done by Jacobsen, is without doubt powerful evidence evincing a lack of appropriate honesty in Jacobsen's character and business dealings. Web objects to the introduction of this evidence as a means of attacking Jacobsen's credibility on the basis that it is barred under Fed.R.Evid. 608(b) which provides for the exclusion of extrinsic evidence in credibility matters.

As we have earlier concluded, the Jensen documents are relevant to factual issues raised in Web's complaint and Gateway's answer, and are therefore substantive evidence. Exclusion under Fed.R.Evid. 608(b) applies to extrinsic evidence on questions of credibility. Since the Jensen documents will not solely be used for impeachment purposes, they do not fall within the prohibition to

admission set forth in the Rule.[2] *3 Christopher B. Mueller & Laird Kirkpatrick; Federal Evidence,* § 268, at 191 (2d ed. 1994). Web's motion in limine must accordingly be denied.

## IV. *CONCLUSION*

For those reasons above stated, the WEB COMMUNICATIONS GROUP, INC.'S MOTION IN LIMINE TO EXCLUDE EVIDENCE RELATING TO BRUCE JENSEN IN PLAINTIFF'S CASE is denied.

---

**2.** To hold otherwise would work an anomalous legal principle where evidence admissible for one purpose but inadmissible for another is therefore inadmissible. Providentially, there is no such rule of evidence. *See U.S. v. Abel,* 469 U.S. 45, 56, 105 S.Ct. 465, 471, 83 L.Ed.2d 450 (1984).