# UNITED STATES *v.* ABEL

No. 83–935.   Argued November 7, 1984—Decided December 10, 1984

46

REHNQUIST, J., delivered the opinion for a unanimous Court.

*Assistant Attorney General Trott* argued the cause for the United States. With him on the brief were *Solicitor General Lee, Deputy Solicitor General Frey, Samuel A. Alito, Jr.,* and *Gloria C. Phares.*

*Yolanda Barrera Gomez,* by appointment of the Court, *post,* p. 809, argued the cause for respondent. With her on the brief was *Peter M. Horstman.*

JUSTICE REHNQUIST delivered the opinion of the Court.

A divided panel of the Court of Appeals for the Ninth Circuit reversed respondent's conviction for bank robbery.[1] The Court of Appeals held that the District Court improperly admitted testimony which impeached one of respondent's

---

[1] 707 F. 2d 1013 (1983).

witnesses. We hold that the District Court did not err, and we reverse.

Respondent John Abel and two cohorts were indicted for robbing a savings and loan in Bellflower, Cal., in violation of 18 U. S. C. §§ 2113(a) and (d). The cohorts elected to plead guilty, but respondent went to trial. One of the cohorts, Kurt Ehle, agreed to testify against respondent and identify him as a participant in the robbery.

Respondent informed the District Court at a pretrial conference that he would seek to counter Ehle's testimony with that of Robert Mills. Mills was not a participant in the robbery but was friendly with respondent and with Ehle, and had spent time with both in prison. Mills planned to testify that after the robbery Ehle had admitted to Mills that Ehle intended to implicate respondent falsely, in order to receive favorable treatment from the Government. The prosecutor in turn disclosed that he intended to discredit Mills' testimony by calling Ehle back to the stand and eliciting from Ehle the fact that respondent, Mills, and Ehle were all members of the "Aryan Brotherhood," a secret prison gang that required its members always to deny the existence of the organization and to commit perjury, theft, and murder on each member's behalf.

Defense counsel objected to Ehle's proffered rebuttal testimony as too prejudicial to respondent. After a lengthy discussion in chambers the District Court decided to permit the prosecutor to cross-examine Mills about the gang, and if Mills denied knowledge of the gang, to introduce Ehle's rebuttal testimony concerning the tenets of the gang and Mills' and respondent's membership in it. The District Court held that the probative value of Ehle's rebuttal testimony outweighed its prejudicial effect, but that respondent might be entitled to a limiting instruction if his counsel would submit one to the court.

At trial Ehle implicated respondent as a participant in the robbery. Mills, called by respondent, testified that Ehle

told him in prison that Ehle planned to implicate respondent falsely. When the prosecutor sought to cross-examine Mills concerning membership in the prison gang, the District Court conferred again with counsel outside of the jury's presence, and ordered the prosecutor not to use the term "Aryan Brotherhood" because it was unduly prejudicial. Accordingly, the prosecutor asked Mills if he and respondent were members of a "secret type of prison organization" which had a creed requiring members to deny its existence and lie for each other. When Mills denied knowledge of such an organization the prosecutor recalled Ehle.

Ehle testified that respondent, Mills, and he were indeed members of a secret prison organization whose tenets required its members to deny its existence and "lie, cheat, steal [and] kill" to protect each other. The District Court sustained a defense objection to a question concerning the punishment for violating the organization's rules. Ehle then further described the organization and testified that "in view of the fact of how close Abel and Mills were" it would have been "suicide" for Ehle to have told Mills what Mills attributed to him. Respondent's counsel did not request a limiting instruction and none was given.

The jury convicted respondent. On his appeal a divided panel of the Court of Appeals reversed. 707 F. 2d 1013 (1983). The Court of Appeals held that Ehle's rebuttal testimony was admitted not just to show that respondent's and Mills' membership in the same group might cause Mills to color his testimony; the court held that the contested evidence was also admitted to show that because Mills belonged to a perjurious organization, he must be lying on the stand. This suggestion of perjury, based upon a group tenet, was impermissible. The court reasoned:

> "It is settled law that the government may not convict an individual merely for belonging to an organization that advocates illegal activity. *Scales* v. *United States*, 367 U. S. 203, 219–24 . . . ; *Brandenb[u]rg* v. *Ohio*, 395

U. S. 444 . . . . Rather, the government must show that the individual knows of and personally accepts the tenets of the organization. Neither should the government be allowed to impeach on the grounds of mere membership, since membership, without more, has no probative value. It establishes nothing about the individual's own actions, beliefs, or veracity." *Id.*, at 1016 (citations omitted).

The court concluded that Ehle's testimony implicated respondent as a member of the gang; but since respondent did not take the stand, the testimony could not have been offered to impeach him and it prejudiced him "by mere association." *Id.*, at 1017.

We hold that the evidence showing Mills' and respondent's membership in the prison gang was sufficiently probative of Mills' possible bias towards respondent to warrant its admission into evidence. Thus it was within the District Court's discretion to admit Ehle's testimony, and the Court of Appeals was wrong in concluding otherwise.

Both parties correctly assume, as did the District Court and the Court of Appeals, that the question is governed by the Federal Rules of Evidence. But the Rules do not by their terms deal with impeachment for "bias," although they do expressly treat impeachment by character evidence and conduct, Rule 608, by evidence of conviction of a crime, Rule 609, and by showing of religious beliefs or opinion, Rule 610. Neither party has suggested what significance we should attribute to this fact. Although we are nominally the promulgators of the Rules, and should in theory need only to consult our collective memories to analyze the situation properly, we are in truth merely a conduit when we deal with an undertaking as substantial as the preparation of the Federal Rules of Evidence. In the case of these Rules, too, it must be remembered that Congress extensively reviewed our submission, and considerably revised it. See 28 U. S. C. § 2076; 4 J. Bailey III & O. Trelles II, Federal Rules of

Evidence: Legislative Histories and Related Documents (1980).

Before the present Rules were promulgated, the admissibility of evidence in the federal courts was governed in part by statutes or Rules, and in part by case law. See, *e. g.*, Fed. Rule Civ. Proc. 43(a) (prior to 1975 amendment); Fed. Rule Crim. Proc. 26 (prior to 1975 amendment); *Palmer* v. *Hoffman*, 318 U. S. 109 (1943); *Funk* v. *United States*, 290 U. S. 371 (1933); *Shepard* v. *United States*, 290 U. S. 96 (1933). This Court had held in *Alford* v. *United States*, 282 U. S. 687 (1931), that a trial court must allow some cross-examination of a witness to show bias. This holding was in accord with the overwhelming weight of authority in the state courts as reflected in Wigmore's classic treatise on the law of evidence. See *id.*, at 691, citing 3 J. Wigmore, Evidence § 1368 (2d ed. 1923); see also *District of Columbia* v. *Clawans*, 300 U. S. 617, 630–633 (1937). Our decision in *Davis* v. *Alaska*, 415 U. S. 308 (1974), holds that the Confrontation Clause of the Sixth Amendment requires a defendant to have some opportunity to show bias on the part of a prosecution witness.

With this state of unanimity confronting the drafters of the Federal Rules of Evidence, we think it unlikely that they intended to scuttle entirely the evidentiary availability of cross-examination for bias. One commentator, recognizing the omission of any express treatment of impeachment for bias, prejudice, or corruption, observes that the Rules "clearly contemplate the use of the above-mentioned grounds of impeachment." E. Cleary, McCormick on Evidence § 40, p. 85 (3d ed. 1984). Other commentators, without mentioning the omission, treat bias as a permissible and established basis of impeachment under the Rules. 3 D. Louisell & C. Mueller, Federal Evidence § 341, p. 470 (1979); 3 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 607[03] (1981).

We think this conclusion is obviously correct. Rule 401 defines as "relevant evidence" evidence having any tendency

to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Rule 402 provides that all relevant evidence is admissible, except as otherwise provided by the United States Constitution, by Act of Congress, or by applicable rule. A successful showing of bias on the part of a witness would have a tendency to make the facts to which he testified less probable in the eyes of the jury than it would be without such testimony.

The correctness of the conclusion that the Rules contemplate impeachment by showing of bias is confirmed by the references to bias in the Advisory Committee Notes to Rules 608 and 610, and by the provisions allowing any party to attack credibility in Rule 607, and allowing cross-examination on "matters affecting the credibility of the witness" in Rule 611(b). The Courts of Appeals have upheld use of extrinsic evidence to show bias both before and after the adoption of the Federal Rules of Evidence. See, e. g., *United States* v. *James*, 609 F. 2d 36, 46 (CA2 1979), cert. denied, 445 U. S. 905 (1980); *United States* v. *Frankenthal*, 582 F. 2d 1102, 1106 (CA7 1978); *United States* v. *Brown*, 547 F. 2d 438, 445–446 (CA8), cert. denied *sub nom. Hendrix* v. *United States*, 430 U. S. 937 (1977); *United States* v. *Harvey*, 547 F. 2d 720, 722 (CA2 1976); *United States* v. *Robinson*, 174 U. S. App. D. C. 224, 227–228, 530 F. 2d 1076, 1079–1080 (1976); *United States* v. *Blackwood*, 456 F. 2d 526, 530 (CA2), cert. denied, 409 U. S. 863 (1972).

We think the lesson to be drawn from all of this is that it is permissible to impeach a witness by showing his bias under the Federal Rules of Evidence just as it was permissible to do so before their adoption. In this connection, the comment of the Reporter for the Advisory Committee which drafted the Rules is apropos:

> "In principle, under the Federal Rules no common law of evidence remains. 'All relevant evidence is admissible, except as otherwise provided. . . .' In reality, of course,

the body of common law knowledge continues to exist, though in the somewhat altered form of a source of guidance in the exercise of delegated powers." Cleary, Preliminary Notes on Reading the Rules of Evidence, 57 Neb. L. Rev. 908, 915 (1978) (footnote omitted).

Ehle's testimony about the prison gang certainly made the existence of Mills' bias towards respondent more probable. Thus it was relevant to support that inference. Bias is a term used in the "common law of evidence" to describe the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party. Bias may be induced by a witness' like, dislike, or fear of a party, or by the witness' self-interest. Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony. The "common law of evidence" allowed the showing of bias by extrinsic evidence, while requiring the cross-examiner to "take the answer of the witness" with respect to less favored forms of impeachment. See generally McCormick on Evidence, *supra*, § 40, at 89; Hale, Bias as Affecting Credibility, 1 Hastings L. J. 1 (1949).

Mills' and respondent's membership in the Aryan Brotherhood supported the inference that Mills' testimony was slanted or perhaps fabricated in respondent's favor. A witness' and a party's common membership in an organization, even without proof that the witness or party has personally adopted its tenets, is certainly probative of bias. We do not read our holdings in *Scales* v. *United States*, 367 U. S. 203 (1961), and *Brandenburg* v. *Ohio*, 395 U. S. 444 (1969), to require a different conclusion. Those cases dealt with the constitutional requirements for convicting persons under the Smith Act and state syndicalism laws for belonging to organizations which espoused illegal aims and engaged in illegal

conduct. Mills' and respondent's membership in the Aryan Brotherhood was not offered to convict either of a crime, but to impeach Mills' testimony. Mills was subject to no sanction other than that he might be disbelieved. Under these circumstances there is no requirement that the witness must be shown to have subscribed to all the tenets of the organization, either casually or in a manner sufficient to permit him to be convicted under laws such as those involved in *Scales* and *Brandenburg*.[2] For purposes of the law of evidence the jury may be permitted to draw an inference of subscription to the tenets of the organization from membership alone, even though such an inference would not be sufficient to convict beyond a reasonable doubt in a criminal prosecution under the Smith Act.

Respondent argues that even if the evidence of membership in the prison gang were relevant to show bias, the District Court erred in permitting a full description of the gang and its odious tenets. Respondent contends that the District Court abused its discretion under Federal Rule of Evidence 403,[3] because the prejudicial effect of the contested evidence outweighed its probative value. In other words, testimony about the gang inflamed the jury against respondent, and the chance that he would be convicted by his mere association with the organization outweighed any probative value the testimony may have had on Mills' bias.

---

[2] In *Scales* and *Brandenburg* we discussed the First Amendment right of association as it bore on the right of persons freely to associate in political groups, short of participating in unlawful activity. See 395 U. S., at 449; 367 U. S., at 229–230. Whatever First Amendment associational rights an inmate may have to join a prison group, see *Jones* v. *North Carolina Prisoners' Labor Union, Inc.*, 433 U. S. 119 (1977), those rights were not implicated by Ehle's rebuttal of Mills.

[3] Rule 403 provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue waste of time, or needless presentation of cumulative evidence."

Respondent specifically contends that the District Court should not have permitted Ehle's precise description of the gang as a lying and murderous group. Respondent suggests that the District Court should have cut off the testimony after the prosecutor had elicited that Mills knew respondent and both may have belonged to an organization together. This argument ignores the fact that the *type* of organization in which a witness and a party share membership may be relevant to show bias. If the organization is a loosely knit group having nothing to do with the subject matter of the litigation, the inference of bias arising from common membership may be small or nonexistent. If the prosecutor had elicited that both respondent and Mills belonged to the Book of the Month Club, the jury probably would not have inferred bias even if the District Court had admitted the testimony. The attributes of the Aryan Brotherhood—a secret prison sect sworn to perjury and self-protection—bore directly not only on the *fact* of bias but also on the *source* and *strength* of Mills' bias. The tenets of this group showed that Mills had a powerful motive to slant his testimony towards respondent, or even commit perjury outright.

A district court is accorded a wide discretion in determining the admissibility of evidence under the Federal Rules. Assessing the probative value of common membership in any particular group, and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403 and ultimately, if the evidence is admitted, for the trier of fact.

Before admitting Ehle's rebuttal testimony, the District Court gave heed to the extensive arguments of counsel, both in chambers and at the bench. In an attempt to avoid undue prejudice to respondent the court ordered that the name "Aryan Brotherhood" not be used. The court also offered to give a limiting instruction concerning the testimony, and it sustained defense objections to the prosecutor's questions concerning the punishment meted out to unfaithful members. These precautions did not prevent *all* prejudice to respond-

ent from Ehle's testimony, but they did, in our opinion, ensure that the admission of this highly probative evidence did not *unduly* prejudice respondent. We hold there was no abuse of discretion under Rule 403 in admitting Ehle's testimony as to membership and tenets.

Respondent makes an additional argument based on Rule 608(b). That Rule allows a cross-examiner to impeach a witness by asking him about specific instances of past conduct, other than crimes covered by Rule 609, which are probative of his veracity or "character for truthfulness or untruthfulness."[4] The Rule limits the inquiry to cross-examination of the witness, however, and prohibits the cross-examiner from introducing extrinsic evidence of the witness' past conduct.

Respondent claims that the prosecutor cross-examined Mills about the gang not to show bias but to offer Mills' membership in the gang as past conduct bearing on his veracity. This was error under Rule 608(b), respondent contends, because the mere fact of Mills' membership, without more, was not sufficiently probative of Mills' character for truthfulness. Respondent cites a second error under the same Rule, contending that Ehle's rebuttal testimony concerning the gang was extrinsic evidence offered to impugn Mills' veracity, and extrinsic evidence is barred by Rule 608(b).

The Court of Appeals appears to have accepted respondent's argument to this effect, at least in part. It said:

> "Ehle's testimony was not simply a matter of showing that Abel's and Mills' membership in the same organization might 'cause [Mills], consciously or otherwise, to color his testimony.' . . . Rather it was to show as well

---

[4] Rule 608(b) provides in pertinent part:

"(b) Specific instances of conduct.—Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness . . . ."

that because Mills and Abel were members of a gang whose members 'will lie to protect the members,' Mills must be lying on the stand." 707 F. 2d, at 1016.

It seems clear to us that the proffered testimony with respect to Mills' membership in the Aryan Brotherhood sufficed to show potential bias in favor of respondent; because of the tenets of the organization described, it might also impeach his veracity directly. But there is no rule of evidence which provides that testimony admissible for one purpose and inadmissible for another purpose is thereby rendered inadmissible; quite the contrary is the case. It would be a strange rule of law which held that relevant, competent evidence which tended to show bias on the part of a witness was nonetheless inadmissible because it also tended to show that the witness was a liar.

We intimate no view as to whether the evidence of Mills' membership in an organization having the tenets ascribed to the Aryan Brotherhood would be a specific instance of Mills' conduct which could not be proved against him by extrinsic evidence except as otherwise provided in Rule 608(b). It was enough that such evidence could properly be found admissible to show bias.

The judgment of the Court of Appeals is

*Reversed.*