UNITED STATES of America,
Plaintiff–Appellee,

v.

Douglas ELKINS, Defendant–Appellant.

94–2166.

United States Court of Appeals,
Tenth Circuit.

Nov. 6, 1995.

**82**

Roger A. Finzel, Assistant Federal Public Defender, Albuquerque, New Mexico, for Defendant–Appellant.

Tara C. Neda, Assistant United States Attorney (John J. Kelly, United States Attorney, with her on the brief), Albuquerque, New Mexico, for Plaintiff–Appellee.

Before TACHA, SETH, and BALDOCK, Circuit Judges.

SETH, Circuit Judge.

Appellant Douglas Elkins appeals his conviction by jury of two counts of being a felon in possession of a firearm and two counts of being a felon in possession of ammunition. 18 U.S.C. §§ 922(g)(1) and 924(e)(1). He was sentenced to four concurrent 262–month sentences. Our jurisdiction is proper under 28 U.S.C. § 1291.

■ On appeal, Elkins alleges that the trial court erred in its denial of his suppression motion based upon the initial stop of the vehicle in which he was travelling. He further challenges the admission of hearsay testimony of an unavailable witness, as well as testimony regarding gang membership. The denial of a motion to suppress is reviewed in the light most favorable to the government, with factual determinations reviewed for clear error. *United States v. Carhee*, 27 F.3d 1493, 1496–97 (10th Cir.). We review de novo, however, the ultimate determination of reasonableness under the Fourth Amendment. *Id.* at 1497. With regard to admission of evidence, the trial court's rulings are reviewed for abuse of discretion. *United States v. Keys*, 899 F.2d 983, 985 (10th Cir.); *United States v. Puckett*, 692 F.2d 663, 670 (10th Cir.).

In December 1993 tension escalated between two rival gangs in an area of Albuquerque known as the "war zone." This escalation was characterized by reports of gunshots, an apparent attempted drive-by shooting, and six arrests in the preceding two and a half months relating to the turf war. Following up on reports of gunshots, street gang detectives Torgrimson and Lewis were dispatched to the problem area and interviewed a member of a gang who informed the detectives that occupants in a maroon Chrysler New Yorker had fired shots at him the previous day. During the interview, the Albuquerque Police Department dispatched the detectives to investigate another report of gunshots. Upon arrival at the location of the reported gunshots, Detectives Torgrimson and Lewis observed a maroon Chrysler New Yorker and interviewed known members of another area gang.

On January 12, 1994, Detectives Torgrimson and Lewis were patrolling the "war zone" area separately when they were informed by the police department that several callers had reported shots in that area. While observing a residence of a known gang member, Detective Lewis saw the same maroon New Yorker depart from the driveway. He followed it until he lost sight of it. He radioed the approximate location of the vehicle to Detective Torgrimson, who located the car as it pulled out of a parking lot. The New Yorker immediately proceeded in the opposite direction of Detective Torgrimson's patrol vehicle. Torgrimson turned around to follow the New Yorker. At that time, quite a bit of activity took place in the rear seat and the right rear door of the New Yorker

opened several inches. Detective Torgrimson, in an effort to stop evidence from being discarded or passengers from fleeing, shined his spotlight on the door, which then closed. The detective turned on his flashing lights, and after three blocks the New Yorker pulled over. During the ensuing search, which is not independently contested on appeal, the detectives discovered a sawed off shotgun, a revolver, ammunition, a baseball bat and a tire iron.

 We initially examine Appellant's contentions regarding the denial of his motion to suppress the evidence found in the vehicle. The issue presented is whether sufficient justification existed to warrant the initial stop of the New Yorker. It is well settled that an investigative stop is justified where police officers have "a reasonable, articulable suspicion that the detainee has been, is, or is about to be engaged in criminal activity." *United States v. Nicholson*, 983 F.2d 983, 987 (10th Cir.) (citing *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1879–80, 20 L.Ed.2d 889). The presence of reasonable suspicion is not determined by any one factor, but by the totality of the circumstances. *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301. Tips, even if anonymous, coupled with independent police work, provide reasonable suspicion to warrant an investigative stop. *Id.* at 329–31, 110 S.Ct. at 2415–17.

 The district court concluded that based upon the facts that the automobile had been identified as one involved in a drive-by shooting, that the same automobile had been seen at a known gang member's address on several occasions, and that there were reports of shots being fired in the neighborhood near the time the vehicle was observed, reasonable suspicion existed justifying an investigative stop. Moreover, we note that the rear door of the vehicle opened at the time the officer's marked patrol car approached from the rear. This provides a further degree of suspicion regarding the occupants of the vehicle. Finally, Detective Torgrimson testified that the New Yorker did not immediately pull over, but proceeded three blocks before it finally stopped. A vehicle's failure to immediately stop provides additional justification for an investigative detention. *United States v. Walraven*, 892 F.2d 972, 975 (10th Cir.).

These circumstances do not, as Elkins contends, pile inference upon inference in order to justify the stop. Rather, based upon several weeks of observation and independent investigation by the detectives concerning the maroon New Yorker, its operators, and the locations at which it was spotted, as well as the activity of the vehicle at the time it was stopped, a reasonable suspicion of criminal activity existed. Accordingly, we conclude that under all the circumstances the detective acted properly in making an investigative stop. *See Nicholson*, 983 F.2d at 987; *United States v. Morgan*, 936 F.2d 1561, 1567–68 (10th Cir.).

 Elkins additionally maintains that a statement to police by another passenger in the automobile that at Elkins' instruction he took the shotgun and shoved it into the trunk through the stereo speaker is not sufficiently against the maker's interest to be admissible as hearsay under Fed.R.Evid. 804(b)(3). Elkins further argues that the prosecution failed to show that the maker was unavailable as contemplated by Rule 804. We reject these arguments. The passenger that made the statement to police clearly made a statement against his own interest. Not only was he on probation at the time of the stop, but he admitted to concealing an illegally possessed firearm. Further, our review of the government's efforts to locate the passenger indicates that he was indeed unavailable at the time of the trial. Finally, we note that even if the district court's decision regarding admissibility of the statement in this instance was erroneous, it was harmless beyond a reasonable doubt. *See Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705. Elkins himself stated at the scene that the weapons were his and that the other passengers were innocent.

 A basic issue in this appeal is the admission of testimony on cross examination by the government of defense witness Joe Gonzales as to gang membership and gang activity, including that of the witness. The trial court permitted the testimony on the

theory that it went to credibility. However, this testimony was not admissible under the circumstances as it was contrary to our holding in *United States v. Keys*, 899 F.2d 983 (10th Cir.), and the Supreme Court's decision in *United States v. Abel*, 469 U.S. 45, 105 S.Ct. 465, 83 L.Ed.2d 450.

In *Abel*, the Supreme Court established that "[a] witness' and a party's common membership in an organization, even without proof that the witness or party has personally adopted its tenets, is certainly probative of bias." *Abel*, 469 U.S. at 52, 105 S.Ct. at 469. The Court went on to note that the testimony "was not offered to convict either [the defendant or the witness] of a crime, but to impeach [the witness'] testimony." *Id.* at 53, 105 S.Ct. at 469.

■ This court in *Keys* similarly, and in line with *Abel*, recognized clear parameters regarding the admissibility of gang-related evidence at trial. Following *Abel*, *Keys* held that in specific contexts gang membership testimony to show the bias of a witness can be admissible. *Keys*, 899 F.2d at 986–87. Essential for the admission of such testimony, however, is the establishment of a foundation that demonstrates "the defendant and the witness to be impeached belong to the same gang." *Id.* at 986 (footnote omitted). *Keys* additionally stated that a district court does not abuse its discretion by admitting evidence of gang membership to show bias where a defense witness' testimony "might have been influenced by [a] fear of [the defendant] and his gang." *Id.* at 987. Thus, a foundation must be made which demonstrates membership on the part of the defendant and the witness whose credibility is at issue in a common gang, or that the witness' testimony was biased due to fear.

We have carefully reviewed the record, and conclude that not only was there no foundation established as outlined by *Keys*, but also that the prosecution's presentation of the evidence was inconsistent with *Keys*. At the outset, we note that there was no demonstration by the government, either by testimony or extrinsic evidence, that Elkins and Gonzales were members of the same gang. The government did attempt to establish Elkins' affiliation in *some* gang by testimony as well as by the tattoo on his stomach. This does not meet the foundation requirement that evidence be admitted that demonstrates common membership of the defendant and the witness. Similarly, although the government did question Gonzales on the stand regarding his gang membership, there was no evidence offered regarding his common membership in the gang with which the prosecution attempted to associate Elkins. This is an insufficient basis for admission of this evidence under *Keys*, which clearly does not emphasize membership in *any gang* but rather the *same gang*. *See id.* at 986–87. Because there was no foundation regarding common membership in a gang, the prosecution's questioning regarding gang membership was not proper under the initial criteria of the *Keys* decision.

The second criteria under which gang testimony may be admissible, as stated above, is if it is shown that the testimony was biased by fear. It is this aspect of *Keys* under which the government in its response brief attempts to legitimatize use of gang membership testimony. Specifically, the government contends that Elkins was a member of a prison enforcer gang known as the New Mexico Syndicate. Testimony was offered that this gang controls discipline in and out of prison. The problem with the government's position, however, is that it failed to establish a foundation demonstrating bias due to fear. There was no attempt to demonstrate that Joe Gonzales, the witness, was aware of potential repercussions that would form a basis for fear. There was simply no effort on the part of the government to establish the basis under which gang evidence testimony was admissible under *Keys*.

In addition to the foregoing, we note that the presentation of gang membership evidence by the prosecution in its closing argument was not in line with *Keys*. In its closing argument, the government stated that Elkins was "gang banging," a "gang member," and "admired by the street gang members." Tr.Vol. IV at 374–75, 379. Such statements go beyond the demonstration of bias on the part of defense witnesses, and seek to provide a basis for the gang testimony not contemplated by *Keys*.

In sum, we agree with the district court that the initial stop of the vehicle in which Elkins was travelling was supported by reasonable suspicion and thus not in violation of the Fourth Amendment. We further hold that the trial court did not abuse its discretion with regard to the admission of testimony from an unavailable witness.

Based upon *Abel* and this circuit's decision in *Keys*, we must hold that Elkins' conviction cannot stand because inadmissible testimony of gang membership was improperly presented by the prosecution and argued in closing.

The conviction of Douglas Elkins is REVERSED, and the case is REMANDED.