**AMERICAN SAMOA GOVERNMENT, Plaintiff,**

**v.**

**TANU SAVEA, Defendant.**

High Court of American Samoa
Trial Division

CR No. 11-05

June 21, 2005

Before RICHMOND, Associate Justice; MAMEA, Associate Judge; and SU`APAIA, Associate Judge.

Counsel: For Plaintiff, Frederick O'Brien, Assistant Attorney General
For Defendant, Matt Pavelich, Assistant Public Defender

## ORDER DENYING MOTIONS TO SUPPRESS EVIDENCE, REVEAL INFORMANT'S IDENTITY, AND OBTAIN EXCULPATORY EVIDENCE REGARDING THE INFORMANT

### Introduction

Defendant Tanu Savea ("Savea") is accused of unlawful possession of the controlled substance of methamphetamine and unlawful possession of the controlled substance of marijuana. Savea has now moved to suppress the seized evidence, reveal the identity of the confidential informant ("informant") in this case, and obtain exculpatory evidence regarding the informant. At the hearing on the motions on May 31, 2005, Savea's counsel waived an evidentiary hearing and submitted the motions for the Court's decision solely in reliance on arguments on the legal issues. Counsel for Plaintiff American Samoa Government ("ASG") concurred in this procedure. Accordingly, we find the underlying facts relevant to the legal issues from the written documents filed in the action.

On January 28, 2005, Police Officer Justin Fa`afiti ("Officer Fa`afiti") received a call from the informant who had previously provided reliable information on two prior occasions resulting in seizures of controlled substances, stating that Savea would be driving eastbound in a blue Ford Ranger Pickup, license plate #4675, to deliver drugs to a buyer in the downtown area. The informant reported to have personally observed Savea driving the blue truck, but apparently acquired the knowledge about the purported drug delivery from the would-be buyer.

Based on the informant's information, Officer Fa`afiti observed the blue truck in front of the Rainmaker Hotel heading east toward Fagatogo. Officer Fa`afiti followed the vehicle and pulled it over behind the Nia Marie building. He recognized the driver as Savea. He asked Savea to step out of the vehicle and then told Savea that he had stopped him based on information that he had received that he was in possession of drugs. Savea then admitted possessing marijuana and held out from his right pants pocket a small clear plastic bag containing eight and one-half hand rolled marijuana cigarettes. Officer Fa`afiti then informed Savea he was under arrest, handcuffed him, advised him of his *Miranda* rights, and transferred him to the central police station in Fagatogo to avoid the gathering crowd.

Upon arriving at the station, Officer Fa`afiti searched Savea and found a small plastic bag containing what appeared to contain methamphetamine. Savea consented to a vehicle search that failed to produce additional contraband. Police officers then provided Savea with a written form apprising him of his *Miranda* rights, but Savea chose not to provide a statement.

## I. The Traffic Stop

Savea maintains that the evidence in this case was obtained as the result of an unlawful traffic stop and warrantless search. We disagree.

■ Under *Terry v. Ohio*, where a law enforcement officer lacks probable cause, but possesses a reasonable and articulable suspicion that a person has been involved in criminal activity, he may detain the suspect briefly to investigate the suspicious circumstances. 392 U.S. 1, 21 (1968). A traffic stop is an investigative detention that must be analyzed in accordance with the principles set forth in *Terry*. In order to conduct a lawful investigatory stop of a vehicle, the detaining officers must have, based on all the circumstances, "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417-18, (1981); *see also United States v. Lambert*, 46 F.3d 1064, 1069 (10th Cir. 1995) (an investigative detention must be supported by "articulable suspicion" that the person is engaged in criminal activity).

■ A confidential tip may justify an investigatory stop if, under the totality of the circumstances, the tip furnishes both sufficient indicia of reliability and sufficient information to provide reasonable suspicion that criminal conduct is occurring, has occurred, or is about to occur. *Alabama v. White*, 496 U.S. 325, 328-30 (1990); *United States v. Elkins*, 70 F.3d 81, 83 (10th Cir.1995). In determining whether, under the totality of the circumstances, the tip is sufficiently reliable to provide reasonable suspicion, a court shall consider the credibility or veracity of the informant, the basis of the informant's knowledge, and the extent to which the police are able independently to verify the reliability of the tip. *See Illinois v. Gates*, 462 U.S. 213, 230 (1983).

■ In the present case, the informant's tip, standing alone, was insufficient to suggest that criminal activity was afoot. Here, the informant told police that Savea was going to be involved in drug activity, and that Savea could be identified by the fact that he would be driving a particular vehicle in a particular direction. Were we to allow this alone to create "reasonable suspicion," any anonymous informant, for malicious reasons or otherwise, would need only make an accusation and describe the everyday characteristics of a person, such as their vehicle or attire, to authorities in order to subject them to a *Terry* stop. *See White*, 496 U.S. at 330 (if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable.).

■ Here, however, the informant was not anonymous, but had on several occasions provided accurate and reliable information leading to the successful discovery of contraband. Moreover, the informant's basis of knowledge of Savea's activities came not merely from a "hunch" or generalized suspicion, but was apparently obtained from direct communications with the would-be buyer of the drugs in transit. Given the source and nature of the information in this particular case, and Officer Fa`afiti's subsequent observation of Savea confirming the informant's description, we find that the officers had a particularized and objective basis to stop Savea for suspicion of engaging in criminal activity. *See United States v. Bentley*, 29 F.3d 1073, 1076 (6th Cir. 1994) (reasonable suspicion in part based on the informant's accurate description of the vehicle, its passengers, and the direction in which it was going); *United States v. Leos-Quijada*, 107 F.3d 786, 792 (10th Cir. 1997) (tip from confidential informant, whose previous tips had resulted in successful apprehensions, was sufficiently reliable to be considered in determining whether a police officer had reasonable suspicion justifying investigatory stop of vehicle.).

The evidence acquired during the *Terry* stop and subsequent arrest was properly seized. ASG emphasizes that the officers did not conduct a patdown and no physical contact occurred between Savea and Officer Fa`afiti, but that Savea admitted to possessing drugs and volunteered a bag containing marijuana cigarettes after Officer Fa`afiti told Savea that he had stopped him based on information that he was in possession of illegal drugs. While Savea now denies this account, he offers no alternative account of events, and makes no suggestion that the police officers physically searched him. Because we can only conclude that Savea himself provided the police officers with the evidence of marijuana possession, the police seizure of the drugs and Savea's arrest were not unlawful.

## II. Obtaining the Identity of the Informant

■ The prosecuting government holds a limited privilege against disclosure of an informant's identity, and it is the defendant's burden to demonstrate that disclosure is warranted. *Rovario v. United States*, 353 U.S. 53, 60-61 (1957). In that regard, the defendant must show that disclosure "would be relevant and helpful" to his defense. *United States v. Williams*, 898 F.2d 1400, 1402 (9th Cir. 1990). Disclosure is not required where a defendant seeks the identity of the confidential informant, for purposes other than aiding in his defense. *See, e.g., United States v. Fixen*, 780 F.2d 1434, 1439 (1986).

■ In the present case, Savea maintains that disclosure of the informant's identity is necessary because the informant may be unreliable in that he or she may be motivated by a desire to avoid prosecution, and similarly, that because Officer Fa`afiti is presently unavailable, only the informant would be available to testify as to the reliability of what he was told by the would-be buyer. This line of reasoning misses the mark. While the identity of the informant may be helpful to Savea in questioning the issue of the informant's reliability, or the underlying reliability of the buyer, such questions relate only to the issue of whether the officers had reasonable suspicion to justify Savea's *Terry* stop, but do not go towards aiding Savea in his defense. Savea is charged in this case with two counts of unlawful possession of controlled substances, methamphetamine and marijuana. Because Savea has not demonstrated how disclosure of the informant will serve to counter the possession charges, and has made only bald assertions, unsupported by the evidence, implying that the informant may himself or herself have planted the drugs, we hold that Savea has not met his burden in overcoming ASG's limited privilege against disclosure of the informant's identity.

■ Similarly, because the extent of the informant's usefulness is limited to establishing reasonable suspicion for stopping Savea, Savea's demand for evidence relating to the informant's criminal history and suspected criminal activity, plea bargains, agreements, or financial arrangements between the informant and ASG, and information as to whether the informant was ever dependant on a controlled substance must be denied, because it is not "exculpatory" evidence material to the outcome of the trial within the meaning of *Brady v. Maryland*, 376 U.S. 83, 87 (1963).

**III. Miranda Warnings**

■ Savea further contends that he was in a custodial situation when first confronted by Officer Fa`afiti, and therefore entitled to a reading of his constitutional rights at that time. We disagree. In *Miranda v. Arizona*, the Supreme Court determined that when an individual is taken into custody, the Fifth and Fourteenth Amendments' prohibition against compelled self-incrimination requires that an individual be properly notified of the right to remain silent, the right to the presence of an attorney, and warned that anything he says can be used against him in a court of law. 384 U.S. 436, 478-79 (1966). Unless and until such warnings are given, and a knowing and intelligent waiver of them are demonstrated by the prosecution, no evidence obtained as a result of interrogation can be used against him. *Id.* at 479.

■■■■ In the present case, we do not find Savea to have been the subject of interrogation at the time of his alleged confession to warrant a recitation of *Miranda* rights. A suspect need not be subject to express questioning by police to be "interrogated" within the meaning of *Miranda*, but rather subject to any words or actions on the part of authorities that the police should know are reasonably likely to elicit an incriminating response. *See Minnesota v. Murphy*, 465 U.S. 420, 431 (1984). At the time of the traffic stop, Officer Fa`afiti identified himself to Savea, asked him to step out of the car, and stated, in Officer Fa`afiti's words, "I told Tanu [Savea] I had stopped him because of the information I had received that he was in possession of illegal drugs." The record then shows that Savea immediately reacted by admitting to being in possession of drugs. Absent more, we are not prepared to interpret Officer Fa`afiti's recitation of his reasons for pulling over Savea as a statement reasonably likely to elicit an incriminating response. Were we to so hold, an officer would be required to provide *Miranda* warnings whenever he were to simply inform someone for the reason of a stop. In short, because the statement was of the type normally incident to stopping a motorist, it does not rise to the level of interrogation.

■■■■ Likewise, we do not find Savea to have been in custody at the time of his alleged confession. In determining whether a suspect was in custody or otherwise deprived of his freedom in any significant way at the time of the alleged interrogation, a court need not find that the he was physically restrained, but rather, based on the totality of the circumstances, must analyze whether a reasonable person would have felt he or she was not at liberty to terminate the interrogation and leave. *See Thompson v. Keohane*, 516 U.S. 99 (1995). In this case, at the time of Officer Fa`afiti's comments, Savea was not arrested. No force, commanding words, or a threatening tone of voice was used against him, and his freedom of movement was not restrained in any way. Although Officer Fa`afiti told Savea to step out of his vehicle, asking a suspect "to turn their motors off and step out of their vehicles upon arrival . . . [does] not render [him] in custody, for it is settled that such a minor intrusion on a citizen's personal security is far outweighed by the government's interest in ensuring officer safety." *United States v. Streifel*, 781 F.2d 953, 959 (1st Cir. 1986); *see also Michigan v. Long*, 463 U.S. 1032, 1047-48 (1983).

### Order

Because the traffic stop was supported by reasonable suspicion and Savea was neither in custody nor the subject of interrogation at the time of his apparent confession, Savea's motion to suppress the evidence is denied. Likewise, because Savea has not shown that the confidential informant's identity bears on his defense, we will not compel disclosure

of the informant's identity or similar related evidence. It is so ordered.