**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 1, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

SHOSHAIN TSOSIE,

Defendant-Appellant.

No. 07-2186
(D. of N.M.)
(D.C. No. CR-06-1444-WJ)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **TYMKOVICH**, and **GORSUCH**, Circuit Judges.

ShoShain Tsosie was convicted of three counts of assault with a dangerous

weapon in Indian country and one count of assault resulting in a serious bodily

injury in Indian country. The government's theory of liability was that Tsosie

aided and abetted his fellow gang members in assaulting the victim.

In this appeal, Tsosie challenges the district court's admission of four

pieces of evidence: (1) cross-examination testimony by defense witnesses

regarding their gang affiliation; (2) a photograph of the victim's head injuries; (3)

_____

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

the contents of a threatening statement made toward the victim; and (4) testimony that the victim and his wife were religious and were reading the Bible immediately before the assault. Tsosie also claims there was insufficient evidence for the jury to convict him.

Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we AFFIRM.

## I. Introduction

Tsosie was convicted of three counts of assault with a dangerous weapon in Indian country, in violation of 18 U.S.C. §§ 1153, 113(a)(3), and 2; and one count of assault resulting in serious bodily injury in Indian country, in violation of 18 U.S.C. §§ 1153, 113(a)(6), and 2. He was acquitted of an additional count of assault with a dangerous weapon in Indian country, and is currently serving a sentence of 24 months in a federal prison.

The four counts stemmed from an incident near the home of the victim of the assaults in Shiprock, New Mexico. On the night of April 30, 2006, Tsosie smashed the windshield and passenger window of the victim's SUV with a large rock. After the victim heard the crashing sound and inspected his vehicle, he went looking for the culprits. He found Tsosie, Eric Wilson, Adrian Beletso, and a few others. Wilson had a baseball bat. When the victim realized he was outmatched, he tried retreating and then to take the bat away from Wilson.

In the ensuing struggle, the victim received multiple injuries. The most serious arose when Wilson smashed a large rock onto the victim's head, causing

him to black-out. The victim suffered a bruised skull, serious nose fracture, and back injuries. Although the number and identities of all the assailants were never firmly established, the victim did recognize Tsosie as one of his attackers because of Tsosie's distinctive spiked, braided hairstyle and his acne. The victim had encountered Tsosie in the neighborhood on Friday and Saturday evenings consistently for six months to one year before the attack, and had personally reported Tsosie to the Navajo Housing Authority three or four times.

The victim's wife also witnessed the assault. She testified four individuals surrounded her husband, with one in front, one on each side, and another behind him. She clearly saw Tsosie on the left side of her husband, as the area was illuminated by a streetlight. The victim's wife saw Eric Wilson hit her husband with a rock and her husband stumble backwards. With the victim on his knees, Tsosie picked up the same rock and hit her husband in the back. As Tsosie was running from the scene, she heard him say, "We'll kill you."

An acquaintance of Tsosie's, Derrick Ross, testified that on the night of the incident Tsosie told Ross he was going to break the car window of a guy who had reported Tsosie to the housing authority. Ross also stated that Tsosie did not participate in the fight with the victim, but rather Eric Wilson and a few juveniles were fighting with him.

## II. Discussion

Tsosie challenges four evidentiary issues—three of which were raised in the district court, and one of which was not. He also challenges the sufficiency of the evidence used to convict him.

### A. *Evidentiary Issues Raised Below*

We review the district court's evidentiary rulings under the abuse of discretion standard. *United States v. Jordan*, 485 F.3d 1214, 1218 (10th Cir. 2007). A district court abuses its discretion only if its decision to admit evidence is "arbitrary, capricious, whimsical, or manifestly unreasonable." *United States v. Atencio*, 435 F.3d 1222, 1235 (10th Cir. 2006).

Tsosie argues the district court abused its discretion by: (1) allowing the government to cross examine three defense witnesses regarding their gang affiliation, (2) allowing the government to show the jury a single photograph of the victim's injuries, and (3) allowing government witnesses to testify about a threatening statement made to the victim. We disagree.

### 1. *Evidence of Gang Affiliation*

Evidence of gang affiliation is admissible for proving a witness's bias if a proper foundation is laid and the evidence is not more prejudicial than probative. The party seeking to introduce evidence of gang membership can lay a foundation by demonstrating either "[1] membership on the part of the defendant and the witness whose credibility is at issue in a common gang, or [2] that the witness'

-4-

testimony was biased due to fear." *United States v. Elkins*, 70 F.3d 81, 84 (10th Cir. 1995); *see also United States v. Keys*, 899 F.2d 983, 986–87 (10th Cir. 1990). This two-part test is disjunctive, which means the party seeking the admission of such evidence need only lay one of the two possible foundations. *Elkins*, 70 F.3d at 84; *United States v. Abel*, 469 U.S. 45, 52 (1984). Even if a proper foundation is laid, the district court must also conclude the evidence is more probative than prejudicial. *Keys*, 899 F.2d at 987; Fed. R. Evid. 403.

Here, the government cross examined three defense witnesses with regard to their gang affiliation. The district court was within its discretion in allowing that questioning. First, the government met its burden of laying a proper foundation by showing Tsosie and the three defense witnesses (Derrick Ross, Adrian Beletso, and Elton Beletso) were members of the same gang—*viz.*, the West Side Crips. *See Elkins*, 70 F.3d at 84; *Keys*, 899 F.2d at 986–87. Second, the evidence was not more prejudicial than probative, as the questioning was limited to showing potential bias and the court issued a limiting instruction to the jury.

The government established common gang membership through the voir dire examination of investigator Dale West, a former criminal investigator and patrol officer for the Navajo Nation. According to West, Tsosie met several of the criteria for membership in the West Side Crips, including (1) associating with other known Crips members, (2) staying in a house with graffiti referencing

-5-

"WS," meaning West Side Crips, (3) wearing the gang's colors of black and dark blue, and (4) having a tattoo of his nickname, "Sho." In fact, West indicated Tsosie was identified as a leader of the gang based on eyewitness accounts of Tsosie initiating gang-related activity in the area.

West also identified Ross and the Beletso brothers as belonging to the West Side Crips gang. West said Tsosie was considered a leader, Ross was "[l]ower on the totem pole," and the Beletsos were in the "inner tier." R., Vol. VII at 509–10. West's testimony was supported by Elton Beletso who admitted he was a former member of the West Side Crips and had a "WS" tattoo. And by Adrian Beletso, who conceded Tsosie was a member of the gang.

West's testimony, coupled with the admissions from the witnesses themselves, provided sufficient foundation showing Tsosie was a member of the same gang as the defense witnesses Ross, Elton Beletso, and Adrian Beletso. *Cf. Keys*, 899 F.2d at 987 (finding insufficient foundation where there was "no evidence in the record" defendant and witnesses were members of the same gang); *Elkins*, 70 F.3d at 84 (finding insufficient foundation where government did not show defendant and witnesses belonged to the "same gang").

Nor was the gang evidence unduly prejudicial under Rule 403. Evidence that the defense witnesses were biased in favor of their fellow gang member was highly probative. *See Keys*, 899 F.2d at 987–88; *Abel*, 469 U.S. at 52 ("A witness' and a party's common membership in an organization . . . is certainly

-6-

probative of bias."); *cf. United States v. DeSoto*, 950 F.2d 626, 630 (10th Cir. 1991) ("Questions properly directed at revealing bias are . . . a permissible basis of impeachment, and are relevant and admissible.").  Although gang membership can be prejudicial, the district court mitigated this problem by giving the jury a limiting instruction which said, "Evidence of possible gang membership may be considered by you for the sole purpose of evaluating the credibility of witnesses Derrick Ross, Elton Beletso, and Adrian Beletso and not for any other purpose." R., Vol. VIII at 664 (Instr. No. 20A).  This limiting instruction diminished any prejudicial effect of the evidence.  *See, e.g.*, *Abel*, 469 U.S. at 55 (noting court's offer to give limiting instruction "ensure[d] that the admission of this highly probative evidence did not *unduly* prejudice" defendant).

In sum, the district court did not abuse its discretion by allowing the government to cross examine three defense witnesses on their gang affiliation.

### 2. *Photograph of Victim's Injuries*

The district court has wide discretion in deciding whether to admit photographs of a victim's injuries.  The trial court's "discretion in balancing the prejudicial effect and probative value of photographic evidence of this type is rarely disturbed." *United States v. Sides*, 944 F.2d 1554, 1562 (10th Cir. 1991) (quoting *United States v. Soundingsides*, 820 F.2d 1232, 1242–43 (10th Cir. 1987)).  In a criminal trial, a jury is "entrusted with the weighty obligation to find the facts" and it is "incompatible with that degree of trust to attempt to 'protect'

them from the evidence" of the crime. *United States v. Naranjo*, 710 F.2d 1465, 1468–69 (10th Cir. 1983).

Tsosie argues the parties had stipulated to the element of serious bodily injury, and that the photograph of the victim's injuries was therefore cumulative and unduly prejudicial. As the government correctly points out, however, there was no such stipulation. The parties stipulated to the opinion a medical expert, Dr. Bishara, would have offered regarding the seriousness of the victim's injuries. The stipulation said that if Dr. Bishara were called to the stand he would testify the victim's injuries, in his opinion, rose to the level of "serious bodily injury." R., Vol. V at 112–13. The photograph was offered *in conjunction with* the stipulation regarding Dr. Bishara's medical opinion to prove this element of the count charged.[1]

The district court did not abuse its discretion by admitting into evidence the single photograph of the victim's facial injuries. The district court correctly noted the photograph was probative of the issue of serious bodily injury for which the government had the burden of proof and was not unduly prejudicial. The government's photograph was taken after the victim had been treated for his

---

[1] Serious bodily injury was an element of the count charging assault resulting in serious bodily injury in Indian Country. *See* 18 U.S.C. § 1153(a) ("Any Indian who commits against the person or property of another Indian or other person . . . assault resulting in serious bodily injury (as defined in section 1365 of this title) . . . shall be subject to the same law and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States.").

injuries, his facial wound had been washed, and he had put on a clean shirt. There is little chance the photograph would have inflamed the passions of the jury; rather, the picture simply afforded the jury an opportunity to evaluate the seriousness of the victim's injury. The photograph was not unduly prejudicial under our well-established case law, and the district court was within its discretion in allowing the photograph. *See Sides*, 944 F.2d at 1562; *Soundingsides*, 820 F.2d at 1243; *Naranjo*, 710 F.2d at 1468.

### 3. Threatening Statement

Tsosie objects to the district court's admission into evidence of a threatening statement, made by one of the victim's attackers, which was laced with profanity and insult toward the victim. The statement discussed the use of a shank to inflict injury upon the victim. *See* R., Vol. VI at 262 ("Shank that fat f***er. Shank him. He's – he's nothing. He's nothing."); *see also id.* at 259, 261. Tsosie argues that because no one was able to identify him as the declarant, the statement was irrelevant and unduly prejudicial. Tsosie offers no legal basis for his argument, however, besides a single citation to Rule 402 of the Federal Rules of Evidence. *See* Fed. R. Evid. 402 ("Evidence which is not relevant is not admissible.").

The statement was relevant, and therefore admissible under Rule 402.[2] "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. The threatening statement made more probable the crucial facts that the victim had been attacked intentionally, with a dangerous weapon, and with a desire to do bodily harm. All of these facts needed to be proved by the government. *See* 18 U.S.C. §§ 1153, 113(a)(3) and (a)(6); *see also United States v. Bruce*, 458 F.3d 1157, 1165 n.4 (10th Cir. 2006) ("The elements differentiating assault with a dangerous weapon from simple assault are the use of a deadly weapon and the intent to commit bodily harm."). Although no shank, or knife, was recovered from the scene, and the count alleging assault with a knife was dropped from the indictment, the statement remained relevant to the three charged counts of assault with a dangerous weapon and assault resulting in serious bodily injury. The attackers were expressing their intent to commit bodily harm, and to do so with a dangerous weapon.

It is irrelevant whether Tsosie or one of his cohorts made the statement. The government prosecuted Tsosie under an aiding-and-abetting theory of

---

[2] *See* Fed. R. Evid. 402 ("All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible.").

liability, in which it needed only to prove Tsosie helped or aided, in some way, someone else commit the charged crime. *See* 18 U.S.C. § 2(a) ("Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."). The statement reveals the intent to inflict bodily harm by the group, which was acting in concert and of which Tsosie was a member. The district court acted within its discretion in overruling the defense's objection to the statement.

### B. Evidentiary Issue Not Raised Below

The standard of review for issues not raised and argued before the district court is plain error. *United States v. Martinez*, 76 F.3d 1145, 1150 (10th Cir. 1996). Under plain error review, we reverse a decision of the district court only if there is (1) error, (2) that is plain, which (3) affects defendant's substantial rights, and (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings. *United States v. Tindall*, 519 F.3d 1057, 1064 (10th Cir. 2008); *United States v. Ruiz-Terrazas*, 477 F.3d 1196, 1199 (10th Cir. 2007).

Tsosie argues the district court plainly erred in allowing the victim and his wife to testify (1) they were involved with their church; and (2) they were reading Bible verses just before the assault. We disagree.

Tsosie first argues it was improper for the prosecutor to elicit testimony concerning the religiosity of the victim and his wife on direct examination by, for example, having the victim testify he was a deacon at his church and his wife was

a Sunday school teacher.  He also alleges it was improper for the victim's wife to testify they often read the Bible together.

This testimony, pertaining to religion and elicited on direct examination, might be construed as an attempt by the prosecutor to improperly introduce evidence of the good character of the victim and his wife.  *See United States v. Sloan*, 811 F.2d 1359, 1364 (10th Cir. 1987) (concluding testimony by employer that victim was "completely trustworthy" and "very honest" were "improper evidence of good character"); Fed. R. Evid. 610 ("Evidence of the beliefs or opinions of a witness on matters of religion is not admissible for the purpose of showing that by reason of their nature the witness' credibility is impaired or enhanced."); Fed. R. Evid. 608(a)(2) ("[E]vidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.").

Rule 610 of the Federal Rules of Evidence specifically prohibits the introduction of evidence of a witness's religious beliefs to bolster that witness's credibility.  *See* Fed. R. Evid. 610.  "Evidence is excluded under that provision because it is presumed to threaten unfair prejudice.  This prejudice can be either supportive or corrosive of credibility."  28 Charles Alan Wright, Arthur R. Miller & Victor James Gold, *Federal Practice and Procedure* § 6153 (2008).

Even assuming this testimony was improperly admitted, however, we conclude the court nevertheless did not commit plain error because the evidence

did not "affect[] the defendant's substantial rights." *Tindall*, 519 F.3d at 1064. Given that the references to the couple's religiosity were so brief, and the evidence of Tsosie's culpability so strong, we have no problem concluding the error did not affect the outcome of Tsosie's trial. *See United States v. Lamy*, 521 F.3d 1257, 1265 (10th Cir. 2008) ("For an error to have affected substantial rights, the error must have been prejudicial: It must have affected the outcome of the district court proceedings." (quotation omitted)).

Tsosie also argues it was plain error for the district court to allow evidence that the victim and his wife were reading the Bible immediately before the assault. Although Tsosie again argues the testimony constituted improper evidence of the victim's good character, in context the testimony more accurately served as a narrative of the events as they happened on the night of the assault. As the government walked the victim and his wife through the night's events, it was relevant and appropriate for them to testify as to their actions immediately before they heard the crash and went outside to discover its cause. The background testimony helped establish the reliability of both witnesses' memory.

Nor was it plain error for the victim to testify as to the fact and content of the specific Bible verse he was reading on re-direct examination. On re-direct, the victim recalled he and his wife were reading Philippians 3:14, which said something to the effect, "I do all things in my God's — in God's strength." R., Vol. VI at 330. This testimony served to rehabilitate the victim after defense

-13-

counsel had attacked his recollection of the night's events. In a statement given before trial, the victim had said he was awakened by a loud crash. But then at trial, he testified he had already been awake at the time of the crash, as he and his wife were reading the Bible.[3] Thus, the exact sequence of events was relevant to

---

[3] The colloquy between defense counsel and the victim reads as follows:

Q. Now, you have testified that, on April 30th of 2006, about 2 a.m., you and your wife [] were reading the Bible, reading some scriptures?
A. Yes.
Q. And do you recall being interviewed on May 1st, 2006, by a Criminal Investigator Dale West? Do you recall that?
A. Yes.
* * *
Q. And do you recall at the time that he interviewed you that you told him that you were awakened by a loud crash at 2 a.m. on April 30th?
A. I don't—
Q. You don't recall telling him that?
A. No, ma'am.
Q. If I show you your interview that you gave to Mr. West, will that refresh your recollection?
A. Yes.
* * *
Q. Sir, does that refresh your recollection about what you told Criminal Investigator Dale West?
A. I was awake, ma'am.
Q. According to this report, it says that you were awakened by a loud crash; isn't that correct?
A. I was awake, ma'am.
Q. So if Mr. West reported in here that you told him you were awakened by a loud crash, he would have been incorrect in that test — in that information that he put there?
A. I don't know, but I was awake.
Q. And you did not tell him anything about reading the Bible and [sic] when this loud noise occurred?
A. I remembered him telling — him I heard — we heard the loud noise.
Q. And you did not tell him anything about reading the Bible?

(continued...)

-14-

the victim's credibility and the extent of his memory of the night's events.

Recalling the specific verse number and content helped establish the victim's

accurate and precise recollection of details from that night.

In sum, because the victim's and his wife's credibility and memory were

important elements supporting the government's prosecution and the defense

counsel invited the discussion of the Bible verse by her cross-examination, the

court did not plainly err in allowing any of the testimony pertaining to religion.

*C. Sufficiency of the Evidence*

Finally, Tsosie argues there was insufficient evidence to convict him of the

assault charges.  We review a claim of insufficient evidence to support a verdict

*de novo*.  *United States v. Hernandez*, 509 F.3d 1290, 1295 (10th Cir. 2007).  In

conducting our review, "we consider the record in the light most favorable to the

government," and "may reverse only if no rational trier of fact could have found

the essential elements of the crime beyond a reasonable doubt."  *Id.* (quotation

omitted).  "In evaluating the evidence under this standard, the court will not

---

[3](...continued)
A.  Nothing about reading the Bible.
Q.  And in fact, what you told him was that you were awakened by a loud crash at 2 a.m.?
A.  I was — we were awake.
Q.  Okay.  So this information that he has here must be inaccurate information?
A.  I don't know.

R., Vol. VI at 294–96.

question the jury's credibility determinations or its conclusions about the weight of the evidence." *United States v. Lazcano-Villalobos*, 175 F.3d 838, 843 (10th Cir. 1999).

Tsosie was convicted of three counts of assault with a dangerous weapon and one count of assault resulting in serious bodily injury. The government proceeded on an aiding and abetting theory, meaning it did not need to prove Tsosie actually assaulted the victim, but rather he in some way furthered the crime. More specifically, to obtain a conviction based upon an aiding and abetting theory, the government had to prove "[1] the defendant willfully associated with a criminal venture and [2] sought through some affirmative action to make that venture succeed." *United States v. Barajas-Diaz*, 313 F.3d 1242, 1249 (10th Cir. 2002) (quotation omitted); *see also United States v. Isaac-Sigala*, 448 F.3d 1206, 1213 (10th Cir. 2006).

Tsosie argues that although he was present, he did not intentionally take part in the assault on the victim. Tsosie cites the testimony of defense witnesses who testified he either did not participate in the assault at all, or did so only in a very minor way. Tsosie fails to acknowledge, however, the considerable evidence establishing his culpability.

After reviewing the entire record in the light most favorable to the government, it is clear there was sufficient evidence for the jury to conclude both elements of the aiding and abetting charge were met. Tsosie (1) "willfully

-16-

associated" in the assaults on the victim, and (2) "sought through some affirmative action" to make those assaults succeed. *See Barajas-Diaz*, 313 F.3d at 1249.

First, the jury could easily have concluded Tsosie willfully associated himself with the assaults. Although Derrick Ross stated Tsosie was not involved in the fight and did not make any threatening statements toward the victim, the jury could easily have disbelieved this testimony. Ross had a clear bias in favor of Tsosie because he was an associate of Tsosie's and involved in the same gang. Ross's testimony was also inconsistent with earlier statements he had made to investigators in which he said he was not present during the fight, and only learned about it later. The jury was not obligated to believe Ross's testimony at trial that Tsosie had nothing to do with the assault on the victim, and instead could have believed the testimony of the victim and his wife. On appeal, we will not question the jury's credibility determinations. *See, e.g.*, *Lazcano-Villalobos*, 175 F.3d at 843.

Both the victim and his wife testified they saw Tsosie striking the victim with his fists. They were able to accurately identify Tsosie because the street where the assault occurred was well-lit by several streetlamps. The victim's wife also testified she heard Tsosie say, "We will kill you," to her and her husband as Tsosie and his fellow attackers left the scene. R., Vol. VI at 382. Thus, there was ample evidence Tsosie willfully associated himself with the assaults.

-17-

Second, the jury had sufficient evidence to conclude Tsosie sought, through an affirmative action, to make the assaults succeed. The victim testified Tsosie was one of his attackers, and that during the assault, Tsosie punched him in the head with his fists. Moreover, the victim testified that if only Eric Wilson had been attacking him, he could have defended himself; the presence of Tsosie and others meant self-defense against the assault was more difficult. The victim's wife also testified she saw Tsosie hit her husband with his fists and with the same rock Eric Wilson had used to strike her husband moments earlier. Again, there was ample evidence to support the jury's conclusion Tsosie "took some act to facilitate" the assault. *See Isaac-Sigala*, 448 F.3d at 1213.

Given this overwhelming evidence, we cannot conclude "no reasonable juror could have reached the disputed verdict." *See United States v. Carver*, 130 F.3d 1432, 1439 (10th Cir. 1997). The evidence was sufficient to show Tsosie had a motive to attack the victim because he had reported Tsosie to the housing authority on three or four occasions, and Tsosie told Ross he would get the victim back for this. The evidence was also sufficient to establish Tsosie participated in the assaults upon the victim to a much more substantial degree than our aiding-and-abetting cases require. *See Isaac-Sigala*, 448 F.3d at 1213; *Barajas-Diaz*, 313 F.3d at 1249*; United States v. McKneely*, 69 F.3d 1067, 1072 (10th Cir. 1995); *United States v. Esparsen*, 930 F.2d 1461, 1470–71 (10th Cir. 1991). Accordingly, we reject Tsosie's insufficiency argument.

-18-

### III. Conclusion

For the reasons set forth above, we AFFIRM.

Entered for the Court,

Timothy M. Tymkovich
Circuit Judge