**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 12-4142**

———————

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

ANDREW ISAAC CHANCE,

        Defendant - Appellant.

———————

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Alexander Williams, Jr., District Judge. (8:10-cr-00760-AW-1)

———————

Submitted: September 14, 2012    Decided: November 6, 2012

———————

Before NIEMEYER and DUNCAN, Circuit Judges, and HAMILTON, Senior Circuit Judge.

———————

Affirmed by unpublished per curiam opinion.

———————

James Wyda, Federal Public Defender, Baltimore, Maryland, Meghan S. Skelton, Staff Attorney, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greenbelt, Maryland, for Appellant. Kathryn Keneally, Assistant Attorney General, Frank P. Cihlar, Gregory Victor Davis, Elissa Hart-Mahan, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Rod J. Rosenstein, United States Attorney, Baltimore, Maryland, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In this appeal, Andrew Chance (Defendant) raises numerous evidentiary challenges to his convictions, following a jury trial, on one count of filing a retaliatory lien against a government employee, 18 U.S.C. § 1521, and three counts of filing a false claim against the government, id. § 287. We affirm.

I.

The statutory section pertaining to the retaliatory lien count provides, in relevant part:

> Whoever files, attempts to file, or conspires to file, in any public record or in any private record which is generally available to the public, any false lien or encumbrance against the real or personal property of an [officer or employee of the United States], on account of the performance of official duties by that individual, knowing or having reason to know that such lien or encumbrance is false or contains any materially false, fictitious, or fraudulent statement or representation, shall be fined under this title or imprisoned for not more than 10 years, or both.

Id. § 1521. The statutory section pertaining to the false claim counts provides, in relevant part:

> Whoever makes or presents to any person or officer in the civil . . . service of the United States, or to any department or agency thereof, any claim upon or against the United States, or any department or agency thereof, knowing such claim to be false, fictitious, or fraudulent, shall be imprisoned not more than five years and shall be subject to a fine in the amount provided in this title.

Id. § 287.

With respect to the single count of filing a retaliatory lien against a government employee, the undisputed evidence at Defendant's trial established the following. On or about July 25, 2007, a federal jury convicted Defendant on one count of filing a false claim against the government based upon Defendant's conduct of knowingly filing a federal income tax return which falsely claimed his entitlement to a refund in the amount of $306,753.00. See id. § 287. Defendant was sentenced to twenty-seven months' imprisonment for such crime.

Approximately two months after his release from federal prison for such crime, on or about August 14, 2009, Defendant filed a UCC Financing Statement with the Maryland Department of Assessments and Taxation (the UCC Financing Statement), in which Defendant listed himself as the secured party and claimed that Steven Dunne (Dunne), the Assistant United States Attorney who had prosecuted him on the 2007 false claim charge, owed him $1,313,000,000.00 in tort damages. Defendant further claimed in the UCC Financing Statement that "Said Tort Claim becomes a perfected claim/lien after 90 days (billing time period), and said lien becomes an 'account receivable,' and the account receivable becomes the private property of the Claimant . . . ." (J.A. 832). Defendant paid the appropriate filing fee to file the UCC Financing Statement. The Maryland Department of

Assessments and Taxation accepted the UCC Filing Statement as filed and made it a publically available record.

Following Defendant's arrest on the charges in the present case and after being advised of his constitutional right to remain silent, Defendant told the arresting officers that he filed the lien against Dunne because Dunne had "done [him] wrong" by prosecuting him. (J.A. 537).

With respect to the three counts of filing a false claim against the government, the undisputed evidence at Defendant's trial established the following. In April 2010, the United States Internal Revenue Service (the IRS) issued an employer identification number to the Andrew Chance Trust. In September 2010, Defendant filed three federal income tax returns for tax years 2007, 2008, and 2009, which Defendant had signed under penalty of perjury. Each return listed the Andrew Chance Trust as the taxpayer and listed the employment identification number that had been issued by the IRS to the Andrew Chance Trust in April 2010.

For each of the three years at issue, the returns falsely reported trust income of $900,000.00, falsely reported $300,000.00 of such income had been withheld by the government, and falsely reported that a $300,000.00 refund was due to the trust. Defendant admitted under oath at trial that he knew the trust had not generated income of $900,000.00 for any of the

three years at issue.  He also admitted that he knew the trust did not have $300,000.00 in withholding in any account with the government for the same three years, but explained that the refund figures on the returns corresponded to a total of $900,000.00 that he believes he is owed in reparations because he is a descendant of slaves.

The district court sentenced Defendant to sixty-five months' imprisonment with respect to the retaliatory lien count and to sixty months' imprisonment on each of the three false claim counts to run concurrently with his sentence on the retaliatory lien count.  This timely appeal followed in which Defendant challenges his convictions on various evidentiary grounds.

## II.

Defendant first challenges all of his convictions on the ground that the district court abused its discretion by granting the government's motion in limine to exclude the testimony of the following mental-health experts he offered to rebut the government's evidence on the specific intent element of the retaliatory lien count and the false claim counts: (1) forensic psychiatrist Dr. Martin Brandes; (2) neuropsychologist Dr.

Victoria Starbuck; and (3) neurologist/neuropsychiatrist Dr. Richard Restak.[1]

Defendant's challenge to his convictions is without merit. The law is well settled that a district court is afforded wide discretion in determining the admissibility of evidence at trial, United States v. Abel, 469 U.S. 45, 54 (1984), and "the district court's evidentiary determinations should not be overturned except under the most extraordinary of circumstances," United States v. Aramony, 88 F.3d 1369, 1377 (4th Cir. 1996) (internal quotation marks omitted). Here, the district court did not abuse its discretion in granting the government's motion in limine to exclude the expert testimony of Drs. Brandes, Starbuck, and Restak.

Of relevance to this issue, without objection by Defendant, the district court charged the jury as follows regarding the specific intent element of Defendant's retaliatory lien count: "the defendant knew or had reason to know that such lien or encumbrance contained a materially false or fictitious statement

---

[1] In deciding this issue on appeal, Defendant asks us to consider transcripts of testimony that the above named mental-health experts gave during his sentencing hearing in this case as well as written reports prepared by such proposed experts which the district court did not have prior to ruling on the government's motion in limine. As the district court did not have the benefit of such material at the time it ruled on the motion, we will not consider such information in deciding this issue.

or representation." (J.A. 720). Without objection by Defendant, the district court charged the jury as follows regarding the specific intent element of his false claim counts: "that the defendant presented the claim knowing that it was false or fictitious as to a material fact." (J.A. 722). Of relevance to this issue, the district court further instructed the jury without objection:

> A claim is false if it was untrue when made and was then known to be untrue by the person making it or causing it to be made.

> A claim is fictitious if it is not real or if it is done – or if it does not correspond to what actually happened and the person making it or causing it to be made knew that it was not real at the time it was made.

> * * *

> An act is done knowingly if it is done voluntarily and purposefully and not done by mistake, carelessness or other innocent reasons. However, the government does not have to prove that the defendant knew of the relevant criminal provisions governing his conduct as long as it proves – the government – proves that the defendant knew the claim was false or fictitious.

(J.A. 724).

At trial, Defendant did not dispute that the events in this case occurred more or less as described by the government's evidence. Defendant also did not raise a federal insanity defense under the Insanity Defense Reform Act (the IDRA), 18 U.S.C. § 17, which act requires a defendant to prove by clear and convincing evidence "that, at the time of the commission of

the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts," id. § 17(a).[2] Rather, the crux of Defendant's defense at trial was that his actions were the result of a confused and irrational mind. In support of this defense, Defendant sought to have Drs. Brandes, Starbuck, and Restak testify that he has a rigid personality style, is mentally inflexible, has certainty in the righteousness of his behavior, and is unwilling to consider alternative explanations. According to Defendant, the doctors' testimony would negate the government's evidence regarding the specific intent element of his charged crimes. Notably, prior to ruling on the government's motion in limine to exclude Drs. Brandes, Starbuck, and Restak from testifying as expert witnesses for the defense, the district court only had the benefit of such doctors' written reports to explain the substance of their proposed testimony.[3]

---

[2] The IDRA further specifies that "[m]ental disease or defect does not otherwise constitute a defense." 18 U.S.C. § 17(a).

[3] After the district court granted the government's motion in limine and after the government had presented the majority of its evidence against Defendant at trial, Defendant requested that the district court allow Drs. Brandes, Starbuck, and Restak to testify in court outside the presence of the jury. Upon the district court's denial of such request, Defendant moved to proffer additional written reports by Drs. Brandes, Starbuck, (Continued)

In granting the government's motion <u>in limine</u> to exclude the expert testimony of Drs. Brandes, Starbuck, and Restak, the district court wrote a thorough, detailed, and well-reasoned memorandum opinion. The crux of the district court's reasoning in granting the motion was that the conclusions about Defendant offered by his proposed mental-health expert witnesses fall into the category of defenses that Congress intended to preclude under the IDRA, which act "expressly prohibits the use of any '[m]ental disease or defect' as a defense unless it demonstrates that the defendant 'was unable to appreciate the nature and quality or the wrongfulness of his acts,'" <u>United States v. Worrell</u>, 313 F.3d 867, 872 (4th Cir. 2002) (quoting 18 U.S.C. § 17), "leav[ing] no room for a defense that raises 'any form of legal excuse based upon one's lack of volitional control'

---

and Restak. The district court denied this request also, characterizing both requests as nothing more than an attempt to take a second bite at the apple. According to the district court, allowing Defendant to proffer the live testimony of his proposed expert witnesses and submit additional reports at such a late point in the trial would severely prejudice the government by giving it "little time to find and prepare its own expert witnesses, [while] Defendant has had the advantage of hearing the [g]overnment present its case-in-chief and the majority of its evidence against Defendant." (J.A. 490). In the present appeal, Defendant does not challenge the district court's denial of these requests. Accordingly, we do not consider any information offered by Defendant in such requests in deciding whether the district court abused its discretion in granting the government's motion <u>in limine</u>.

including 'a diminished ability or failure to reflect adequately upon the consequences or nature of one's actions,'" id. (quoting United States v. Cameron, 907 F.2d 1051, 1061 (11th Cir. 1990)). We fully agree with the district court's reasoning in granting the government's motion in limine, as set forth in the district court's memorandum. See United States v. Chance, 2011 WL 5826675 (D.Md. November 17, 2011) (memorandum opinion). Accordingly, we rely on such reasoning to hold the district court did not abuse its discretion in granting such motion.

III.

Defendant challenges his retaliatory lien conviction on the basis that the district court abused its discretion by granting the government's motion in limine to exclude the testimony of J. Kimon Yiasaides (Yiasaides), his proposed expert witness on the use of bonds and liens in this case and commercial disputes. Notably, Defendant did not provide the district court with a report from this proposed expert.

The district court granted the government's motion in limine with respect to Yiasaides on the basis that his expertise was irrelevant and unnecessary to the case considering the relatively simple concepts at issue with respect to whether Defendant filed a false lien against a federal prosecutor. Additionally, the district court concluded that such expert

- 10 -

testimony would likely only confuse or mislead the jury, and that if it became evident during trial that jurors required specialized knowledge to understand the evidence or determine a fact in issue, it would reconsider its ruling. The district court never deemed it necessary to reconsider its ruling.

Having reviewed the relevant materials on this issue, including the record and the parties' briefs, we hold the district court did not abuse its discretion in granting the government's motion in limine to exclude the expert testimony of Yiasaides.

IV.

We have carefully reviewed Defendant's remaining assignments of error, including his argument that the district court improperly restricted his cross-examination of Dunne and his argument that the district court improperly restricted the redirect examination of himself as a witness, and find such assignments of error to be without merit.

We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED